**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CAMALYN TURNER,<br>Plaintiff,<br><br>vs.<br><br>ATLANTA INDEPENDENT SCHOOL SYSTEM, SUPERINTENDENT DR. BRYAN JOHNSON, in his officially capacity; MATTHEW SMITH, individually, CHELSEA MONTGOMERY, Individually,<br>Defendants. | : | Civil Action<br>File No. 1:24-cv-3781<br>Jury Trial |

**AMENDED COMPLAINT**

COMES NOW CAMALYN TURNER ("Ms. Turner" or "Plaintiff"), the Plaintiff, and brings this Complaint seeking damages for Defendants' intentional retaliation against her for reporting violations of educational rules and policies related to problematic grading practices at the school district's alternative program, for participating in an internal investigation of misconduct by public school district employees, and for advocating on behalf of students with disabilities.

This action arises under the First and Fourteenth Amendment to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the antiretaliation provisions of the Americans with Disability Act, 42 U.S.C. §§12131-12134, 12203, the Rehabilitation Act of 1973, Section 504, 29 U.S.C. §794, and the Georgia Whistleblower Act, O.C.G.A. § 45-1-4; and other state laws.

Ms. Turner was a member of the former school superintendent's leadership team at the Atlanta Independent School System ("AISS"). She was placed in an interim position and then constructively discharged in retaliation for her written and verbal reporting of grading improprieties by AISS administration at the school district's alternative education program that violated Ga. Admin. R. & Reg. 160-1-5-.15(2)(f) and the Family Educational Rights & Privacy Act ("FERPA"), 20 U.S.C. § 1232 (g), and for her reporting of employee misconduct at a school district sponsored event during the school that violated the Code of Ethics for Educators, Ga. Admin. R. & Reg. 505-6-.01(3)(c), and the policies of AISS, and for her reporting of school district violations of the procedural protections required by the Individuals with Disabilities Education Act

(“IDEA”), 20 U.S.C. § 1400 *et seq*., for students with disabilities. Ms. Turner has been unable to secure employment in Atlanta since the termination. She has moved out of the area and continues to suffer significant damages related to the retaliatory conduct by AISS and its employees.

## JURISDICTION AND VENUE

1.

This action arises under the authority vested in this Court by virtue of 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction pursuant to 42 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction of the state claims under 42 U.S.C. § 1367, as those claims and facts arise against the same parties and from the same operative core of material facts. At all times relevant to this Complaint, the actions of Defendants were under color of law. Venue is proper in this Court as the claims arose here and the Defendants reside in this district.

## PARTIES

2.

Plaintiff Camalyn Turner currently resides in and is a citizen of Shelby County, Tennessee. At all times relevant to this complaint, Ms. Turner was employed by Atlanta Independent School System (AISS). Ms. Turner was a school district administrator working in the highest levels of AISS administration.

3.

Defendant Dr. Bryan Johnson ("Dr. Johnson") currently is the Superintendent of the Atlanta Independent School System. Dr. Johnson is a final decision maker and responsible for many of the operations of AISS, including the implementation of AISS policies and procedures. Dr. Johnson is sued in his official capacity as the chief executive officer of AISS.

4.

Defendant AISS is a legal entity subject to suit. AISS operates the school system in the City of Atlanta, by and through the City of Atlanta Board of Education. AISS was Ms. Turner's employer and was responsible, along with former superintendents of AISS Dr. Lisa

Herring and Dr. Danielle Battle, for protecting her right to advocate on behalf of students with disabilities, to report violations of laws, rules, or policies, as well as to fully participate in the internal investigations of employee misconduct, free from illegal retaliation. AISS is prohibited from retaliating against employees who advocate on behalf of students with disabilities, who report violations of laws, rules, or policies, who participate with investigators seeking information about employee misconduct, and/or who exercise their rights to freedom of speech. AISS' policies, practices and actions were a moving force in the injuries complained of herein.

5.

At the time of the incidents underlying this complaint, Defendant Dr. Matthew Smith was the interim Chief of Schools and Chief Performance Officer for AISS, working with the Superintendent's leadership team. He is sued in his individual capacity, including a claim for damages, as an administrator at AISS, Ms. Turner's supervisor, and an individual responsible for the retaliatory conduct by AISS. At all times relevant, Dr. Smith, as Chief of Schools, was the supervisor and decision maker regarding Ms.

Turner's employment. He personally and intentionally acted against Ms. Turner's exercise of her protected rights and her reporting of illegal activity by AISS employees, including consuming alcohol during working hours, as well as her written reporting of grading improprieties at the AISS alternative school.

6.

At the time of the incidents underlying this complaint, Defendant Dr. Chelsea Montgomery was the Assistant Superintendent of Student Support Services. She is sued in her individual capacity, including a claim for damages, as an administrator at AISS, Ms. Turner's *de facto* supervisor, and an individual partly responsible for the retaliatory conduct by AISS. Ms. Montgomery supervised Ms. Turner, harassed, intimidated, and engaged in intentional retaliatory acts regarding Ms. Turner's employment. She personally and intentionally acted against Ms. Turner following the exercise of her protected rights, including her reporting of illegal activity by AISS employees, such as consuming alcohol during working hours, as well as her written reporting of grading improprieties at the AISS alternative school.

## FACTUAL ALLEGATIONS

*AISS Hires Turner as AISS Leadership*

7.

Atlanta Public Schools hired Ms. Turner in January 2021. Ms. Turner relocated from Birmingham, Alabama.

8.

Former Superintendent Dr. Lisa Herring hired Plaintiff in 2021 as Special Assistant to the Superintendent. Ms. Turner's duties included coordination for all business operations within the Office of the Superintendent and acting as the Superintendent's representative on various committees and national boards by speaking on behalf of the Superintendent. Ex. 1, *Job Description, Special Assistant* (*Superintendent*).

9.

In January 2022, Superintendent Herring promoted Ms. Turner to the Interim Coordinator of Student Discipline. Superintendent Herring described Ms. Turner as "a veteran educator and a licensed attorney. Her legal and educational expertise as well as her knowledge of organizational leadership will help APS meet the

immediate, elevated need for support and management of our disciplinary process stemming from the vacancy of our Coordinator of Student Discipline role." Ex. 2, *Email from Herring to Board*, dated January 21, 2022.

10.

In her first seven months as Interim Coordinator of Student Discipline, Ms. Turner reorganized the Student Discipline department with the approval of her supervisor and the City of Atlanta Board of Education. Ms. Turner evaluated existing data, identified organizational challenges, and proposed solutions to improve the department. Ms. Turner's proposals to improve the department were presented to and endorsed by the Atlanta Board in June 2022.

11.

In August 2022, Ms. Turner was named as the Interim Executive Director of School Supports and Initiatives. Ex. 3, *August 2022 Personnel Action Report* (Section C, #18, unnumbered page 3). Ms. Turner's duties increased and included oversight of the Student

Discipline, Student Assignment and Records and Leadership Development.

12.

For the next several months, Ms. Turner sought to become the permanent Director of School Supports. Ms. Turner sought to hire previously budgeted staff positions to address the increased demands of implementing the proposed improvements to the Student Discipline office during the 2022-2023 school year.

13.

As the interim Executive Director of School Supports, Ms. Turner investigated and reported to AISS administration compliance issues within the Student Discipline office. Participation in internal investigations of employee misconduct and employee oversight and discipline for violation of ethical standards were not within the scope of Ms. Turner's job duties as interim Executive Director of School Supports.

14.

Ms. Turner reported that students with disabilities who received significant disciplinary sanctions were not provided with

the procedural protections required by the Individuals with Disabilities Education Act (IDEA).

15.

Ms. Turner raised her concerns to her supervisors and to other AISS administrators. Ms. Turner told Dr. Smith that students protected by IDEA had not received the extra procedural protections required to ensure they were not being discriminated against. Ms. Turner explained that students had been referred for long term suspension or expulsion without consideration of 34 C.F.R. § 300.530(e) that requires:

> Within 10 school days of any decision to change the placement of a child with a disability because of a violation of a code of student conduct, the LEA, the parent, and relevant members of the child's IEP Team (as determined by the parent and the LEA) must review all relevant information in the student's file, including the child's IEP, any teacher observations, and any relevant information provided by the parents to determine—(i) If the conduct in question was caused by, or had a direct and substantial relationship to, the child's disability;

16.

Ms. Turner further explained that the failure to conduct manifestation determinations upon removal from school meant that students with disabilities may have received school suspensions or

expulsion for behavior that was caused by a disability. Ms. Turner proposed that further training and support for school discipline administrators should be provided.

17.

Upon receiving this information from Ms. Turner, Mr. Smith did not follow up with local administrators, propose any trainings, or take any remedial action to address this violation of federal law.

18.

Ms. Turner further reported that AISS employees were securing illegal waivers of students' rights prior to school tribunal hearings. Finally, Ms. Turner reported that AISS employees offered more favorable treatment to family members and close friends whose children were subjected to the student disciplinary process.

*AISS Investigates an Illegal Christmas Party*

19.

In December 2022, only four months after being moved to School Supports, Ms. Turner's new supervisor, Matthew Smith (Chief of Schools), hosted a Christmas party for departments under his supervision. Invitations to the party were sent through AISS email.

20.

The party, organized by Matt Smith and Tawanaa Roberts, was held at a public local bowling alley. Approximately 80-100 AISS employees attended the event that took place during the school-work day. Non-employees, including workers at the bowling alley, were also present at the party in a public business establishment at location where the event was held. Ms. Turner attended the holiday party but did not consume any alcohol or violate any AISS policies or ethical rules. Ms. Turner chose to attend the party and was not required by her job responsibilities to do so.

21.

For educators, drinking alcohol on the job violates Standard 3 of the Code of Ethics for Educators, which provides that "An educator shall refrain from the use of alcohol or illegal or unauthorized drugs during the course of professional practice," Ga. Admin. R. & Reg. § 505-6-.01(3)(c), and it also violates AISS policies.

22.

AISS Employee Relations received a complaint alleging inappropriate conduct by several AISS employees, including Mr.

Matt Smith. As part of an internal investigation, AISS interviewed Ms. Turner on January 5, 2023. During the interview, Ms. Turner reported that AISS employees were drinking alcohol at the holiday party hosted by Mr. Smith. Ms. Turner also shared with the investigator that members of the technology department were openly videoing the event. Ms. Turner also provided names of other AISS employees in attendance as witnesses to the event, however, Ms. Turner was the only eyewitness interviewed by AISS Employee Relations that could describe employee conduct at the event. Inexplicably, non-employee witnesses, including those providing alcohol to the party goers, were not interviewed.

23.

On March 16, 2023, AISS Employee Relations issued a report finding no violations of AISS policies. The report cited evidence collected during the investigation, including testimony of Ms. Turner stating that "she saw cups that looked like they might have alcohol in them, but she was not definite. However, the behavior of some of the participants seems to indicate they were drinking." Ex. 4; *Investigation Summary Report,* dated January 2, 2023.

24.

On March 16, 2023, the report was widely distributed by another AISS employee through a social media platform and publicly identified Ms. Turner as an eye-witness to the unethical and unprofessional conduct.[1] Ms. Turner's supervisor, Matt Smith, was aware of this report and of Ms. Turner's participation in the investigation.

*Ms. Turner Reports Violation of Law, Rule Policy*

25.

In late March 2023, Plaintiff notified her supervisor, Matt Smith, that the AISS alternative school Hank Aaron New Beginnings Academy had violated AISS grading policies by moving students onto a virtual platform without properly recording their performance on the state-adopted curriculum. The result was that students' course grades would not reflect subject area competency as required by Ga. Admin. R. & Reg. § 160-1-5-.15(2)(f) and the Family Educational Rights & Privacy Act (FERPA) 20 U.S.C. § 1232 (g).

---

[1] The post exists on X (formerly Twitter) at https://x.com/CommAPSProgress/status/ 1636366401605648384.

26.

Ms. Turner followed up her initial report to supervisor Matt Smith with an email to Smith explaining ***<u>in writing</u>*** that the alternative school, Hank Aaron New Beginnings Academy, had violated AISS grading policies by moving students onto a virtual platform without properly recording their previous grades. The email reiterated Plaintiff's reporting that "the effect of enrolling students in the AVA [Atlanta Virtual Academy] Flex program was that students could not retain any credits for assignments completed at their home schools during that semester." Ex. 5, *Email from Turner to Smith* dated April 21, 2023.

27.

The administrative transfer of students to the virtual platform caused these students to receive grades that did not reflect their level of mastery because the students lost classroom credit for work completed before they had transferred to the alternative school. The email further suggested to Matt Smith that a grade audit may be necessary and that a meeting to collaborate with other departments about the issue was appropriate. *Id.*

*AISS Campaign of Retaliation*

28.

Shortly after Ms. Turner provided truthful information to the AISS Employee Relations investigator about the holiday event hosted by Matt Smith where inappropriate consumption of alcohol occurred and reported the grade policy violations to Matt Smith, Ms. Turner again requested permission to fill vacancies in her department with funding she had secured. Defendant Smith acted to prevent Ms. Turner from using the funding for additional personnel in the student discipline office.

29.

In April 2023, Defendant Smith required Ms. Turner to coordinate with Ms. Montgomery, someone not directly involved with student discipline, on the Discipline Department reorganization that had been presented to and approved by the Atlanta Board of Education.

30.

In June 2023, Ms. Turner was informed that she would be removed as the interim ED of School Supports and named the

interim ED of Student Supports. Ms. Turner was told she would be permitted to interview for the permanent position, but if she was not selected AISS would dismiss her.

31.

In July 2023, Defendant Montgomery, who continued to work at Defendant Smith's direction, became Ms. Turner's direct supervisor. In this position, Defendant Montgomery took over the reorganization proposed by Ms. Turner. Defendant Montgomery acted to exclude and undermine Ms. Turner from the department reorganization that Ms. Turner had conceptualized. Despite Ms. Turner's role as the interim head of Student Supports, Defendants Smith and Montgomery prohibited her from hiring new employees to fill existing unstaffed positions in her department.

32.

Within weeks, members of the Atlanta Board of Education requested an update on the status of the reorganization from Ms. Turner. As Ms. Turner prepared for the Board meeting where she would present publicly, Defendant Montgomery limited her communication with the Board and openly harassed her. Defendant

Montgomery prevented Ms. Turner from fully informing the Board on the positive outcomes associated with the Student Discipline reorganization, including strong gains in limiting illegal weapons, including guns, on campus. Ultimately, Defendants undermined Plaintiff's legitimacy with the Atlanta Board of Education by removing Ms. Turner's name from the Board agenda, replacing her name from a slide presentation sent to the Board, and hovering over Ms. Turner's during her presentation to the Board in August 2023.[2]

33.

Defendant Montgomery openly harassed Ms. Turner. Defendant Montgomery insulted Ms. Turner in front of AISS principals attending student discipline trainings. Defendant Montgomery interrupted Ms. Turner during trainings, contradicting Ms. Turner or dismissing Ms. Turner's explanations of the AISS Code of Conduct or what constitutes a required reporting for school safety procedures. Defendant Montgomery directed administrators to

---

[2] Ms. Turner's presentation, with Defendant Montgomery standing right behind her, can be viewed here, starting at 00:23:00: https://www.facebook.com/watch/?v= 307248885109828 .

exclude Ms. Turner from grievances in violation of AISS grievance policy.

34.

Defendants Smith and Montgomery treated similarly situated AISS employees differently because they had not reported violations of IDEA/504, state laws, and AISS rules and policies. Other direct reports to Ms. Montgomery presented to the Atlanta Board of Education without her interference. Defendant Montgomery's other reports were allowed to give presentations without interruptions or contradictions. Other direct reports to Ms. Montgomery were not excluded from the grievance procedures or professionally undermined by Ms. Montgomery.

35.

In August 2023, despite not being recommended for the position, Ms. Turner completed three rounds of interviews for the permanent E.D. of Student Support position. Unlike other AISS employees with interim positions, Ms. Turner was told that if she was not selected as the ED of Student Supports she would be dismissed.

36.

On or about August 31, 2023, Defendant AISS provided Ms. Turner with a "Separation Notice" identifying the termination of her employment as of September 29, 2023. Ex. 6, *Separation Notice*. The Separation Notice signed by Monica Seda was also sent to Matthew Smith, Ms. Turner's supervisor at the time.

37.

Following her termination, Ms. Turner met with AISS's I.T. department and returned all AISS computer equipment within her possession. Nonetheless, accusations were spread within the AISS central office that Ms. Turner had stolen iPads when she vacated her office. These rumors were baseless and damaging and prompted Ms. Turner to contact AISS central office staff with confirmation from the I.T. department identifying that she had returned all equipment.

38.

Defendants, intentionally and with reckless indifference to Ms. Turner's federally protected rights, engaged in harassment and discrimination by retaliating against Ms. Turner for her advocacy on behalf of students with disabilities and for her reporting of improper

and illegal conduct by AISS employees and administrators.

Defendants campaign of retaliation included:

- Blocking Ms. Turner from fully staffing her office or hiring direct subordinates;
- Subjecting Ms. Turner to the unnecessary supervision of Ms. Montgomery;
- Removing Ms. Turner at the ED of School Supports and moving her to the ED of Student Supports without any assurance of continued employment;
- Excluding Ms. Turner from the reorganization of the discipline department that she had conceptualized;
- Deviating from AISS procedures and practices to harm Ms. Turner professionally and personally;
- Harassment, hostility, and public insults by Ms. Montgomery, including preventing Ms. Turner from directly communicating with the Board of Education;
- Terminating Ms. Turner without any legitimate justification after not selecting her as the ED of Student Supports.

39.

Since being terminated, Ms. Turner has been unable to secure comparable employment. Ms. Turner has made, and continues to make, reasonable efforts to mitigate her damages by securing substitute employment.

40.

Ms. Turner's termination negatively impacted, and continues to impact, her reputation as an educator and clouds her performance record. This stigma negatively impacted, and continues to impact, Ms. Turner's ability to secure alternative and future employment. Defendants knew, and have known, that negative performance reports adversely impact an educator's ability to secure gainful employment in Georgia.

41.

Ms. Turner's advocacy and reporting of illegal conduct were known by all Defendants and caused the negative actions against her, including the decision to terminate her employment. These actions were intentional by all Defendants. Such actions were taken with personal malice and in reckless disregard of Plaintiff's individual

rights and her legal and ethical obligations to report all evidence of illegal, unethical and unprofessional conduct, as well as in response to her professional commitment and obligations under her contract with AISS.

42.

Defendants' retaliatory conduct was in response to Ms. Turner's advocacy and her opposition to the discriminatory treatment under the ADA and Section 504 of some of the disabled students attending AISS, including some in the alternative education program.

43.

Ms. Turner has suffered significant and on-going damage because of AISS's and other Defendants' intentional, illegal, and discriminatory conduct, including severe psychological and emotional trauma, mental suffering, and wounded feelings.

## COUNT I

## VIOLATION OF SECTION 504 and AMERICANS WITH DISABILITIES ACT

44.

The allegations set forth in Paragraphs 1-18, 28-43 are incorporated by reference herein.

45.

Ms. Turner was the interim Executive Director of Student Supports at AISS responsible for "strategic leadership…relating to student behavior…," including the oversight and improvement of the student discipline procedures at AISS. In the execution of her duties, Ms. Turner advocated for qualified individuals with disabilities within the meaning of Section 504 and the ADA that had been illegally denied their rights related to student discipline.

46.

Ms. Turner participated in proceedings and engaged in protected conduct while advocating on behalf of those students at AISS that were being subjected to illegal and inappropriate educational practices related to student discipline.

47.

Defendants were aware of Ms. Turner's advocacy on behalf of students with disabilities and in direct response acted in concert to

illegally retaliate against Ms. Turner by denying her the opportunity to apply to any open positions in her department, positions for which she was qualified, and terminating her contract. *E.g.*, 34 C.F.R. § 100.7(e); *Settlegoode v. Portland Schools*, 371 F.3d 503, 512 n.6 (9th Cir. 2004); *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1132 (10th Cir. 2010); *Sweet v. Tigard-Tualatin School District*, 124 Fed. Appx. 482 (9th Cir. 2005).

48.

Ms. Turner brings her claim under Section 504 against the Defendant School District, the Defendant Superintendent, Defendant Smith and Defendant Montgomery in their official capacities, seeking all appropriate remedies and procedures, and rights as otherwise set forth under Title VI of the Civil Rights Act of 1964, or as otherwise provided by law. *See* 29 U.S.C. § 794(a)(b)(2009).

49.

Ms. Turner brings her claim against the Defendant School District, the Defendant Superintendent, Defendant Smith and Defendant Montgomery in their official capacities, under the anti-retaliation provision of the ADA. *See* 42 U.S.C. §12203. She seeks an

award of declaratory/injunctive relief, equitable, nominal and compensatory relief as set in the enlightened conscience of the court and jury.

50.

Ms. Turner brings her claims against Defendant Montgomery and Defendant Smith, individually, for retaliation under the anti-retaliation provision of the ADA. *See* 42 U.S.C. § 12203.
Ms. Turner seeks an award of award of nominal, presumed, and compensatory damages, as set in the enlightened conscience of the court and jury.

**COUNT II**
**VIOLATION OF THE FIRST AMENDMENT/RETALIATION**

51.

The allegations set forth in Paragraphs 1 - 12, 19 - 24, 28 – 41, 43 are incorporated by reference herein.

52.

All Defendants are state governmental entities or governmental employees and therefore acted under color of law, constituting state action and state conduct within the meaning of that term under Section 1983.

53.

Ms. Turner has exercised her right to freedom of speech by advocating on behalf of students, including students with disabilities, that were being subjected to illegal and inappropriate educational practices by AISS. Such advocacy is constitutionally protected speech.

54.

Plaintiff has a right to speak on such matters free of government action taken to chill or limit her exercise of such rights. Defendants' retaliation against her was intended to chill and actually chilled Ms. Turner's speech and adversely affected her ability to continue to engage in such protected conduct.

55.

Ms. Turner's statements regarding misconduct by AISS employees at the holiday party hosted by Matt Smith was speech outside of the responsibilities of her duties as an employee of the school district. To maintain certification to work in any public school in Georgia, Ms. Turner is beholden to the Standards in the Code of

Conduct for Educators, which required Turner, and any educator, to report her coworkers' unethical conduct. Ga. Admin. R. & Reg. § 505-6-.01(4)(a). Had she not been called on by HR to give her eyewitness account of the incident, she was required to report it to the Georgia PSC. Ga. Admin. R. & Reg. § 505-6-.01 (3)(h).

56.

As part of the holiday party investigation, AISS called Ms. Turner to provide truthful testimony, and she did so. Truthful testimony by a public employee is outside the scope of her ordinary job duties and is speech as a citizen for First Amendment purposes even when her testimony relates to her public employment or concerns information she learned during that employment.

57.

The testimony provided by Ms. Turner was concerning a holiday party where non-employee-citizens were present and could also have been asked to provide truthful testimony. She testified as a citizen-witness in the same way that the bowling alley employees, who supplied alcohol to party-goers, could (and should) have been

called as fact witnesses to an event held in a place of public accommodation off-school premises.

58.

Another person posted Ms. Turner's participation in the investigation on social media, and her participation in testifying truthfully was then identified outside of the school.

59.

Defendant AISS, the Defendant Superintendent, and Defendant Smith and Montgomery were aware of Ms. Turner's reporting of illegal and unethical conduct, Ms. Turner's truthful testimony, and the social media posting concerning her testimony. Defendants, acting in concert, intentionally and with malice, retaliated against Ms. Turner for her speech about illegal and inappropriate educational practices of AISS. Such actions were taken to chill the exercise of her rights, to punish and to retaliate. Such actions were intentional and extreme and would deter a person of ordinary firmness from the exercise of First Amendment rights.

60.

Defendants' actions were contrary to known and settled law, and to Defendant AISS's policies protecting employees from retaliation.

61.

Defendant District, the Defendant Superintendent, Defendant Smith and Defendant Montgomery's actions violated Ms. Turner's rights under the First and Fourteenth Amendment of the United States Constitution, giving rise to a claim for relief under 42 U.S.C. § 1983. Ms. Turner seeks an award of award of declaratory/injunctive relief nominal, presumed, compensatory damages, and as against the individual Defendants, punitive damages, as set in the enlightened conscience of the court and jury.

**COUNT III**
**VIOLATION OF GEORGIA WHISTLEBLOWER ACT**

62.

The allegations set forth in Paragraphs 1-12, 13-24, 25-27, 28-43, are incorporated by reference herein.

63.

O.C.G.A § 45-1-4(d)(2) provides that "No public employer shall retaliate against a public employee for disclosing a violation of or

noncompliance with a law, rule, or regulation to either a supervisor or a government agency, unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity." The Code states further that, "No public employer shall retaliate against a public employee for objecting to, or refusing to participate in, any activity, policy, or practice of the public employer that the public employee has reasonable cause to believe is in violation of or noncompliance with a law, rule, or regulation." *Id.*

64.

By reporting in an internal investigation alcohol consumption by AISS employees at a holiday party hosted by Defendant Smith during the workday, Ms. Turner objected to an activity of AISS that she had reasonable cause to believe was a violation of Standard 3 of the Code of Ethics for Educators, which provides that "An educator shall refrain from the use of alcohol . . . during the course of professional practice." Ga. Admin. R. & Reg. § 505-6-.01(3)(c). She also had a reasonable cause to believe this was a violation of AISS policies requiring compliance with professional standards.

65.

By reporting grading non-compliance by the administration of the school district's alternative program to her supervisor, Defendant Smith, Ms. Turner objected to an activity of AISS that she had reasonable cause to believe would result in course grades that did not reflect the students' subject area competency in violation of Ga. Admin. R. & Reg. § 160-1-5-.15(2)(f) and the Family Educational Rights & Privacy Act (FERPA) 20 U.S.C. § 1232 (g).

66.

By reporting to AISS that students with disabilities who received disciplinary sanctions were not provided with the procedural protections required by the IDEA, that AISS employees were securing illegal waivers of students' rights prior to school tribunal hearings, and that AISS employees offered more favorable treatment to family members and close friends whose children were subjected to the student disciplinary process, Ms. Turner was objecting to an activity of AISS that she had a reasonable cause to believe violated IDEA, 20 U.S.C. § 1400 *et seq*.

67.

Defendants intentionally and in retaliation for Ms. Turner's reporting of their illegal, unethical, and inappropriate conduct prevented Ms. Turner from hiring staff for open positions in her department. Defendants harassed Ms. Turner. Defendants deviated from AISS procedures and practices to harm Ms. Turner professionally and personally. Defendants terminated Ms. Turner's employment in retaliation for Ms. Turner's reporting of illegal conduct.

68.

As a result of Defendants' retaliatory actions, Plaintiff was wrongfully terminated from her position and lost wages and benefits that would have accrued, including sick time, compensatory time and accumulated pension vesting time.

69.

Ms. Turner seeks an award of award of declaratory/injunctive relief nominal, presumed, compensatory damages, and punitive damages, against Defendant AISS as set in the enlightened conscience of the court and jury.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL HARM**

70.

The allegations set forth in Paragraphs 7- 43 are incorporated by reference herein.

71.

Defendant Smith and Defendant Montgomery, acting at Defendant Smith's direction, subjected Ms. Turner to unjustified and continuing retaliatory conduct through Defendant Smith's control over Ms. Turner. Such control over Ms. Turner existed by virtue of their special supervisor/subordinate relationship and was exercised by engaging in hostile work-related discussions and obstructing and preventing Ms. Turner from being selected for open positions in her own department for which she was qualified.

72.

Each retaliatory act was insulting in nature and outrageous. Further, the actions over the course of the school year accumulated and constituted outrageous conduct. This conduct was harassing and violated the federal prohibition against unlawful harassment or

retaliation for the exercise of protected actions. The actions were taken with personal malice towards Ms. Turner.

73.

Defendant Smith and Defendant Montgomery were aware that such retaliatory conduct would result in a stressful situation for Ms. Turner and subject her to substantial emotional distress. They were aware of Ms. Turner's vulnerable and subordinate work relationship to Defendant Smith and aware of the importance and need for her to maintain her employment.

74.

Defendant Smith's and Defendant Montgomery's retaliation was intentional, extreme, and outrageous and in reckless disregard for Ms. Turner's rights. The conduct caused actual physical and severe emotional harm to Ms. Turner.

75.

Such retaliatory actions and abuse of position was improper and illegal, and known as such to Defendants Smith and Montgomery. Defendant Smith's and Defendant Montgomery's

actions give rise to a claim in tort for the intentional infliction of emotional harm.

76.

Ms. Turner seeks an award of award of declaratory/injunctive relief nominal, presumed, compensatory damages, and as against the individual Defendants, punitive damages, as set in the enlightened conscience of the court and jury.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff seeks the following:

a) Reinstatement as the ED of School Supports at the current salary for the position;

b) Front pay for the value of her employment position from the time of the retaliatory non-renewal to the time Ms. Turner secured gainful employment and the difference, if any, of such benefits and employment;

c) Reimbursement of all benefits that she would have received but for her illegal termination;

d) Damages incurred as a result of AISS's and the other Defendants' illegal retaliatory actions;

e) Punitive damages as against the individual Defendants and aggravated damages as that term is used under Georgia law;

f) Award reasonable attorney's fees, expenses, and costs of litigation pursuant to 42 U.S.C. § 1988 and other applicable laws; and

g) Award such other and further relief as this Court deems just and proper.

A JURY TRIAL IS REQUESTED.

Respectfully submitted this the 13th day of November, 2024.

*/s/ Craig Goodmark*
Craig Goodmark
Georgia Bar No. 301428

Goodmark Law Firm
1425A Dutch Valley Place
Atlanta, GA 30324
(404) 719-4848
cgoodmark@gmail.com